# Commonwealth *v.* Mayberry, Appellant.

*Criminal law — Involuntary manslaughter — Voluntary manslaughter—Death by automobile—Indictment—Amendment.*

1. Involuntary manslaughter consists in the killing of another without malice and unintentionally but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.

2. Where a person negligently operates an automobile at an unlawful speed, and unintentionally and without malice kills another, he may be convicted of involuntary manslaughter, but not of voluntary manslaughter.

3. Under an indictment charging murder and manslaughter, there can be no conviction of involuntary manslaughter.

4. A mistake in an indictment, which is manifestly one of grammar, may be amended.

Argued May 9, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 92, March T., 1927, by defendant, from judgment of O. & T. Lawrence Co., Dec. T., 1926, No. 34, on conviction of voluntary manslaughter, in case of Commonwealth v. Fred L. Mayberry. Reversed.

Indictment for murder and manslaughter. Before HILDEBRAND, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of voluntary manslaughter on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were instructions referred to in opinion of Supreme Court, quoting record.

*J. Norman Martin,* with him *A. Martin Graham* and *Chas. Matthews, Jr.,* for appellant.—The indictment was defective in substance and should have been quashed:

Com. v. Gillespie, 7 S. & R. 469; Com. v. Pine, 2 Clark (Pa.) 154; Cathcart v. Com., 37 Pa. 109; Campbell v. Com., 84 Pa. 187.

There was no evidence of conscious purpose on the part of defendant to take life: Welker v. Hazen, 242 Pa. 603; Com. v. Gable, 7 S. & R. 423; Com. v. Mosler, 4 Pa. 264.

Defendant was not guilty of voluntary manslaughter.

*James A. Chambers,* Special Assistant District Attorney, with him *J. Elder Bryan,* District Attorney.—A verdict of involuntary manslaughter could not be entered: Com. v. Gable, 7 S. & R. 423; Walters v. Com., 44 Pa. 135; Hilands v. Com., 114 Pa. 372; Com. v. Micuso, 273 Pa. 474; Com. v. Weinberg, 276 Pa. 255; Com. v. Greevy, 75 Pa. Superior Ct. 116.

Defendant was not acquitted: Com. v. Cole, 62 Pitts. L. J. 91; Com. v. Huston, 232 Pa. 209.

The evidence in the case does not show a conscious purpose to take life, but does show such a state of facts as would sustain a conviction of second degree murder: Smith v. Com., 100 Pa. 324; Com. v. Drum, 58 Pa. 9.

OPINION BY MR. JUSTICE SCHAFFER, June 25, 1927:

Defendant appeals from his conviction and sentence, to a prison term for the crime of voluntary manslaughter, protesting that the proofs adduced at trial did not warrant a finding of guilt of that offense.

In order to determine whether his position is well taken an exact summing up of the facts and circumstances as they appear on the record is essential so that the boundaries separating the various offenses which generically group themselves under the designation homicide may be plainly seen.

Appellant was driving a Ford coupe along Highland Avenue, a much travelled paved highway in the City of New Castle about 10 o'clock at night. This street runs north and south; his course was in the latter direction

and he proceeded along the proper (west) side of the avenue near the curb. Just before it reaches Leasure Avenue, an intersecting street, Highland Avenue curves to the right at an angle of 25 degrees. As he approached this swerve in the street appellant was running his car at undue speed, estimated by witnesses at from 35 to 60 miles an hour, the weight of the testimony indicating that it was at the rate of 40 to 45 miles. Defendant testified that as he approached the curve he endeavored to slow down, but that for some reason, possibly due to an accident to his car a few minutes before when he collided with an obstruction in another highway, his brakes did not work and his car did not respond to his endeavor to turn it with the curve. Instead of making the turn, it continued across Highland Avenue in a line approximately straight with that which defendant had been travelling and struck with great force an automobile which was on the opposite (east) side of the avenue in which a child, Mary Emma Gibson, was riding, the car being driven by her father. As a result of the collision she was killed.

Of what crime was defendant guilty upon this state of facts? We are of opinion that the failure of defendant to make the turn with the curve of the street was due to his excessive, negligent and unlawful speed. It unquestionably appears that he did not purposely run into the car in which the child was seated. He himself was injured in the collision. He did not know the child or any of those in the automobile with her, and his intention was to turn with the curve in the roadway; had he done so there would have been no collision. That he applied his brakes just before coming to the deflection in the street appears not alone from his own testimony, but from witnesses called by the Commonwealth, who said they heard their screeching, but his speed was so great that his car would not take the curve.

We are not disposed to hold light reins on those who recklessly speed automobiles on the highways, but we

think the trial judge in his own mind unduly magnified appellant's offending to his prejudice. In the opening paragraph of the charge of the court, the jury were told that the defendant was charged with the highest crime known to the law and later on were instructed that they could find him guilty of murder of the first degree (this was clearly unnecessary and prejudicial), of the second degree or of voluntary manslaughter. Under the evidence produced none of these crimes was established; the crime shown was involuntary manslaughter. Involuntary manslaughter consists in "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty": 29 Corpus Juris, page 1148; Wharton on Homicide (3d ed.) section 211; Com. v. Micuso, 273 Pa. 474; Com. v. Gable, 7 S. & R. 422; 13 R. C. L. page 784.

We do not say that there may not be crimes rising even to first degree murder committed by the instrumentality of an automobile. "Death caused by recklessly driving a motor vehicle, or by carelessly discharging a firearm in a populous place, are examples of involuntary manslaughter; but to intentionally run down or shoot a citizen, causing his death, is a higher offense": Com. v. Micuso, 273 Pa. 474. If the evidence shows the ingredients of murder, the instrumentality of its commission is a matter of no consequence. Had the appellant at bar dashed down Highland Avenue and wantonly, recklessly and in disregard of consequences hurled his car against another or into a crowd or over a person on sidewalk or street and death resulted, then, considering the kind of instrumentality that an automobile is, we are not prepared to say that he ought not to face the same consequences that would be meted out to him if he had accomplished death by wantonly and wickedly firing a gun: People v. Brown, 53 Cal. App. 664, 200 Pac.

727; Montgomery v. State, 178 Wis. 461, 190 N. W. 105; State v. Trott, 190 N. C. 674, 130 S. E. 627. See also State v. Massey, 20 Ala. App. 56, 100 So. 625; 1 East's Pleas of the Crown, 231, 263; 1 Hale's Pleas of the Crown 476. But this is not that kind of case. It is rarely that the facts in a motor vehicle accident will sustain a charge of murder. The element of malice is usually missing. "There must be a consciousness of peril or probable peril to human life imputed to the operator of a car before he can be held for murder": Shorter v. State, 147 Tenn. 355, 247 S. W. 985. Here the accused had no intention of colliding with the car in which the child was, his intention was to follow the curve of the street and keep away from traffic on its other side. He was negligently operating his automobile at a speed unlawful under the circumstances and therefore was guilty of involuntary manslaughter, which is the crime of which the jury thought him guilty, as they so brought in their verdict in the first instance.

Under the indictment charging murder and manslaughter, there could not be a conviction of involuntary manslaughter: Com. v. Weinberg, 276 Pa. 255; Com. v. Micuso, 273 Pa. 474; Hilands v. Com., 114 Pa. 372; Walters v. Com., 44 Pa. 135; Com. v. Gable, 7 S. & R. 423; and the court properly rejected the verdict so finding. The court erred, however, in receiving any verdict other than that of not guilty on the indictment as drawn.

While the conclusion we have reached disposes of the case, we think it well to pass upon one other question which the record discloses, so that it and others of like kind may not hereafter be brought before us with hope of a favoring outcome. The indictment charged that the defendant "in and upon the body of one Emma Mary Gibson......did make a certain assault and *she* the said Emma Mary Gibson......of *his* malice aforethought [in the murder count] did kill and murder [in the one for manslaughter] did kill and slay." The court permitted the Commonwealth to amend by changing the

word "she" to "her." This was proper. The mistake was manifestly one of grammar and was amendable: Com. v. Boyd, 246 Pa. 529; Pardue v. Com., 96 Pa. 311; Sadler's Criminal Procedure 261; 22 Cyc. 291, 292. Such unsubstantial defects cannot be availed of in the administration of the criminal law under modern conditions.

The judgment is reversed, without prejudice to the right of the Commonwealth to proceed against defendant for the crime of involuntary manslaughter: Com. v. Greevy, 271 Pa. 95.