411 A.2d 815

**COMMONWEALTH of Pennsylvania**

v.

**Mitchell D. DiVENTURA, Appellant.**

Superior Court of Pennsylvania.

Argued July 17, 1979.

Filed Oct. 12, 1979.

472

Mark S. Refowich, Easton, for appellant.

Michael Vedomsky, Assistant District Attorney, Easton, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

NIX, Judge:

On April 14, 1977, after a jury trial appellant was found guilty of murder in the first degree and was sentenced to life imprisonment. A direct appeal to the Supreme Court of Pennsylvania was filed by trial counsel, who thereafter petitioned to withdraw. On April 20, 1978, Chief Justice Eagen granted leave to trial counsel to withdraw; and, on May 15, 1978, the Supreme Court ordered the case remanded to the trial court with directions to conduct an evidentiary hearing to determine whether trial counsel was ineffective. This appeal is from the order of the trial court which held that trial counsel was not ineffective and that appellant had not been denied his constitutional right to representation by competent counsel.

The sole issue we must decide in this appeal is whether trial counsel was ineffective for failing to request a charge on the elements of involuntary manslaughter.

In assessing the effectiveness of trial counsel, our task is to examine the record to see whether it supports a conclusion that the particular course chosen by counsel had some reasonable basis to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Before inquiring into the basis for counsel's failure to raise or pursue a certain issue at trial, we must determine if the issue is of arguable merit. *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

Thus the threshold question in this inquiry is whether a request for a jury instruction on involuntary manslaughter was of arguable merit. The trial in this case took place in April, 1977. Appellee contends that the absence of a specific request for a charge on involuntary manslaughter was in accord with the applicable law at the time of trial. Appellee

---

* Justice ROBERT N. C. NIX, Jr. of the Supreme Court of Pennsylvania, and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

contends that the Supreme Court of Pennsylvania changed the law on October 7, 1977 in the case of *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977).[1] Appellee would have us conclude, since the trial here occurred prior to the holding in *Polimeni*, that there was no issue of arguable merit at that time and therefore trial counsel must be deemed not to have been ineffective.[2]

*Polimeni* held that in a trial on a murder indictment, when there is evidence presented from whatever source that would permit the trier of fact to return a verdict of involuntary manslaughter, the defendant is entitled, upon request to a charge on the elements of involuntary manslaughter. *Id.*, 474 Pa. at 436, 378 A.2d at 1191. In *Polimeni*, the Supreme Court also concluded: "We need not, however, consider whether the common law rule in Pennsylvania should be changed, for we are of the opinion that our holding in the case at bar is required by the new Pennsylvania Crimes Code, 18 Pa.C.S. § 101 *et seq.*, which was in effect at the time of the commission of the crimes here involved." *Commonwealth v. Polimeni*, 474 Pa. at 438–39, 378 A.2d at 1193.

We would be forced to agree with appellee if we were of the view that *Polimeni* constituted a change from existing law. The Supreme Court has held to the contrary. In *Commonwealth v. Warin*, 484 Pa. 555, 558 n. 2, 400 A.2d 588, 589 n. 2 (1979) the Court noted:

"Appellee argues that the rule announced in the *Polimeni-Garcia-Ford* trilogy should be applied only to cases in which trial commenced after October 7, 1977, the date upon which the *Polimeni*, *Garcia*, and *Ford* decisions were announced. Appellee's argument is premised upon the

---

**1.** *See also Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977) and *Commonwealth v. Ford*, 474 Pa. 480, 378 A.2d 1215 (1977).

**2.** The Supreme Court of Pennsylvania has steadfastly refused to require trial counsel to envision future developments in the law or to require trial counsel to predicate trial strategy upon a future development in the law. *See e. g., Commonwealth v. Triplett*, 476 Pa. 83, 89, 381 A.2d 877 (1977).

assumption that the *Polimeni-Garcia-Ford* trilogy changed prior law. This, we believe, is a false premise. These cases merely interpreted the 1972 Crimes Code, 18 Pa.C. S.A. § 101 *et seq.* (1973 & Supp. 1978–79) which changed the prior practice. Therefore, since the criminal act in the instant case was controlled by the 1972 Code, there is no question presented as to retroactivity. See *Commonwealth v. Dussinger*, 478 Pa. 182, 195, 386 A.2d 500, 506 (1978.)"

In *Commonwealth v. Dussinger, supra*, the Supreme Court granted a new trial because the trial court erroneously refused the appellant request for an instruction on involuntary manslaughter. In *Dussinger*, it was held, "Since this crime was committed after the effective date of the new Crimes Code, appellant was entitled to the charge upon request." *Id.*, 478 Pa. at 195, 386 A.2d at 506. The homicide in this case occurred on November 5, 1976. There can be no question that the provisions of the 1972 Crimes Code applied to this case.

While, the Supreme Court's view as to when a charge of involuntary manslaughter is required, where requested by the defense, has not been uniform, it is nevertheless clear that under the facts of this case such a charge was required, if it had been requested. In *Commonwealth v. Warin, supra*, the varying positions of the individual justices were stated succinctly:

"A majority of this Court has yet to agree upon the appropriate rationale underlying the right to such an instruction. See [(*Commonwealth v. Polimeni*) 474 Pa. 430, 442, 378 A.2d 1189, 1195]. (Opinion of Pomeroy, J., finding such a right when the evidence provides a rational basis for a verdict of involuntary manslaughter); *Commonwealth v. Garcia, supra*, 474 Pa. at 465, 378 A.2d at 1207 (Opinion of Roberts, J., basing this right upon the theory that involuntary manslaughter is a lesser included offense of murder); *Commonwealth v. Polimeni, supra*, 474 Pa. at 447–48, 378 A.2d at 1198 (Concurring opinion of Manderino, J., suggesting that such an instruction proper-

ly allows the jury to exercise compassion and return a verdict of involuntary manslaughter); *Commonwealth v. Dussinger, supra,* 478 Pa. at 197–98, 386 A.2d 507–508 (Concurring opinion of Nix, J., finding such a right only where the factual dispute centers upon an element which distinguishes murder from involuntary manslaughter)." 484 Pa. at 558, 400 A.2d at 589.

At trial, the appellant took the stand in his defense and testified that he had struggled with his wife and that he stopped fighting with her when he noticed that she was unconscious. He further testified that he placed a cord around the neck of the victim so that she would be frightened when she awakened. The appellant testified that he loved his wife and did not intend to kill her. He testified that he believed she was alive when he left the apartment. If believed, the above testimony might support a conviction for a grossly negligent or reckless killing. Such a killing would meet the statutory definition of involuntary manslaughter. *See* 18 Pa.C.S.A. § 2504(a) (1973); *Commonwealth v. Warin, supra; Commonwealth v. Polimeni, supra.* In *Warin,* the Supreme Court held that it was error for the trial court to refuse to grant the appellant's request for a jury instruction on involuntary manslaughter when "[a]ppellant's theory of defense at trial was that he did not possess the callous disregard to constitute malice but rather the death resulted from the doing of an unlawful act in a reckless and grossly negligent manner." *Id.* 484 Pa. at 558, 400 A.2d at 589. Thus, whether the lesser included offense theory, the rationale basis theory, the mercy dispensing theory, or the disputed element theory is applied, the appellant would have been entitled to an instruction on involuntary manslaughter if one had been requested.

Having decided that appellant would have been entitled to an instruction, had the request been made, we come to the core determination, which is to assess whether the course actually chosen by trial counsel had some reasonable basis designed to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney, supra.* That is, we must

decide whether the failure to request a jury instruction on involuntary manslaughter had any reasonable basis. In this case, the sole defense for trial counsel's failure to request a jury instruction was that the trial preceded the Supreme Court's decision in *Polimeni*. The weakness of this position has already been discussed. Unlike the situation in *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979) there was no assertion of trial strategy as the reason for counsel's decision not to request the instruction.[3] A court will not speculate in order to impute to trial counsel a reasonable trial strategy where no such strategy has been argued or is evident. We are thus forced to conclude that the course chosen by trial counsel in failing to request a jury instruction on involuntary manslaughter, at a time when the law as applied to the facts of this case would have required the trial judge to have granted such an instruction, had one been requested, was absent a reasonable basis designed to effectuate his client's interest. Appellant was therefore denied his right to the effective representation of trial counsel and must be awarded a new trial.

The judgment of sentence imposed of the court below is reversed and a new trial is granted.

WIEAND, J., files a dissenting opinion.

3. "We have already noted, accepting the version of the facts most favorable to the defense, the appellant was at least guilty of reckless or grossly negligent conduct which was the legal cause of the death. In the charge given by the court, the jury's alternatives were confined to either finding a malicious killing (i. e., murder), an intentional killing resulting from provocation and passion or an acquittal. Thus if the jury had accepted the version of the defense, it could properly have returned a verdict of not guilty. If, however, trial counsel had sought and obtained a charge as to involuntary manslaughter, the option of an outright acquittal on this record would have been eliminated. In view of the presence of this legitimate reason for electing not to request a charge that would virtually end all hope of an acquittal, we cannot conclude as urged by appellant that counsel's decision was without a reasonable basis to effectuate his client's best interests. *Commonwealth v. McGrogan*, 449 Pa. 584, 297 A.2d 456 (1972)."
*Commonwealth v. Musi*, 486 Pa. at 110–11, 404 A.2d at 382.

478

WIEAND, Judge, dissenting:

Appellant was tried by a jury and found guilty of murder in the first degree. The majority holds trial counsel ineffective for failing to anticipate the decisions in *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977), and *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977), by requesting a charge on involuntary manslaughter. This result is not compelled by prior decisional law. The Supreme Court has held unequivocally that trial counsel will not be held ineffective for failing to anticipate future developments in the law. His stewardship must be examined under standards as they existed at the time of the trial. *Commonwealth v. Triplett*, 476 Pa. 83, 89, 381 A.2d 877, 881 (1977). See also: *Commonwealth v. Roach*, 479 Pa. 528, 388 A.2d 1056 (1978); *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976); *Commonwealth v. Hill*, 450 Pa. 477, 301 A.2d 587 (1973); *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A.2d 526 (1971); *Commonwealth v. Garrett*, 425 Pa. 594, 229 A.2d 922 (1967).

At the time of trial in the instant case, decisional law had held that involuntary manslaughter was not a permissible verdict on an indictment charging murder. See: *Commonwealth v. Jackson*, 450 Pa. 417, 419 n.2, 299 A.2d 209, 210 n.2 (1973); *Commonwealth v. Hoffman*, 439 Pa. 348, 357, 266 A.2d 726, 731 (1970); *Commonwealth v. Edwards*, 431 Pa. 44, 52, 244 A.2d 683, 687 (1968); *Commonwealth v. Palermo*, 368 Pa. 28, 31–32, 81, A.2d 540, 541–42 (1951); *Commonwealth v. Hardy*, 347 Pa. 551, 554, 32 A.2d 767, 768 (1943); *Commonwealth v. Mayberry*, 290 Pa. 195, 199, 138 A. 686, 688 (1927). Consequently, trial courts uniformly had refused to instruct juries on involuntary manslaughter in cases where the indictment charged only murder.

This practice continued after enactment of the Crimes Code in 1972.[1] Not until *Polimeni* and *Garcia* was it held that in a trial on a homicide indictment a defendant was entitled upon request to an instruction on involuntary man-

1. Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 101 et seq., effective June 6, 1973.

slaughter if there was evidence which would permit a finding of involuntary manslaughter. This was based upon an interpretation of the Crimes Code, although a majority of the Court was unable to agree upon the specific, underlying rationale for the right to such an instruction. Subsequently, in *Commonwealth v. Warin*, 484 Pa. 555, 400 A.2d 588 (1979), the Court held that because *Polimeni* and *Garcia* had merely interpreted the 1972 Crimes Code, the holdings thereof were applicable to cases tried prior thereto but in which direct appeals were pending. See also: *Commonwealth v. Dussinger*, 478 Pa. 182, 386 A.2d 500 (1978).

Given this development of the law, I am unable to agree that counsel was ineffective for failing to foresee that the Crimes Code would be interpreted as it was in *Polimeni* and *Garcia*. We should not require counsel to possess "the qualities of a seer" and fault him for failing to anticipate that the Crimes Code would be interpreted in a manner contrary to established criminal practice in effect at the time of trial. See: *Commonwealth v. Triplett*, supra, 476 Pa. at 89, 381 A.2d at 881. The test is whether trial counsel had a rational basis for not requesting a charge on involuntary manslaughter. See: *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). In my judgment, counsel did have such a basis for his inaction. In view of existing practice and the state of decisional law, he could reasonably conclude that the trial court would deny a request for a charge on involuntary manslaughter and that a request therefor would be fruitless. See: *Commonwealth v. Alvarado,* supra.

At trial, it was appellant's contention that the killing of his wife had occurred unintentionally and without malice during the course of a physical struggle. Under these circumstances a jury could have found that death was caused by a reckless or grossly negligent act. The majority concludes, therefore, that appellant was entitled to an instruction on involuntary manslaughter and awards a new trial because counsel was ineffective for failing to request such an instruction. This is ironic. The jurors were told

that if the killing had been committed unintentionally and without malice, they were required to return a verdict of not guilty. Because counsel did not anticipate *Polimeni* and *Garcia*, appellant actually received a more favorable instruction from the court than he would have received if counsel had met the majority's standard of effectiveness. Under these circumstances, counsel's ineffectiveness, if any, was harmless. It is not a sound basis on which to award a new trial.

Finally, the effect of the majority's decision is, if not disastrous, certainly most unfortunate. It will compel a new review of most convictions of murder and voluntary manslaughter under the 1972 Crimes Code and will require new trials in many of them. All this because otherwise effective trial counsel did not anticipate the decisions in *Polimeni* and *Garcia* and thereby obtained for his client more favorable jury instructions than his client would have received had he requested and been granted an additional charge on involuntary manslaughter.

I dissent.