J-S34028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUCAS GUGGENHEIMER | : | |
| | : | |
| Appellant | : | No. 1430 WDA 2021 |

Appeal from the PCRA Order Entered November 2, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0001624-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUCAS GUGGENHEIMER | : | |
| | : | |
| Appellant | : | No. 1431 WDA 2021 |

Appeal from the PCRA Order Entered November 2, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0001637-2016

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:               **FILED: NOVEMBER 14, 2022**

---

[*] Retired Senior Judge assigned to the Superior Court.

Lucas Guggenheimer (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.[1]  We affirm.

Appellant's charges at the above dockets were consolidated for trial.  He was convicted of one count of third-degree murder, two counts of recklessly endangering another person, and two counts of carrying a firearm without a license (CFWL).  He was acquitted of one count each of aggravated assault, attempted murder, and robbery.  This Court explained:

> On October 11, 2015, Pittsburgh police officers arrived at a scene of a 911 call in the Arlington section of Pittsburgh and found the victim, Justin Granda, deceased on the sidewalk.  He had been shot several times with both 9 mm and .32 caliber bullets.
>
> While investigating the murder, officers checked Granda's cell phone records and identified Sean Sperber as a witness.  Granda called Sperber on October 10, 2015, to set up a marijuana buy. Appellant and Granda met Sperber outside of his apartment. Wary of conducting a drug deal with his wife and child present, Sperber led Appellant and Granda into his brother's apartment on the first floor of the same building.
>
> After discussing the marijuana purchase, Appellant asked to use the bathroom.  While walking to the bathroom with Sperber, Appellant pulled out a gun and pointed it at Sperber.  A fight ensued during which Appellant shot Sperber's brother Seth (who came out of his bedroom when the fight started) in the upper thigh.  After both Appellant and Granda were removed from the

---

[1] Appellant has complied with the Pennsylvania Supreme Court's directive in **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) ("where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case.").  On December 29, 2021, this Court consolidated the appeals *sua sponte*.

apartment, Sean Sperber called 911. Police recovered Granda's cell phone and spent 9 mm casings from the scene.

Johanna Jones [(Jones)], a cab driver, testified that she first picked up Appellant (who was wearing a gray hoody) and another man, Amirae Benton. She next drove Benton and Appellant to Granda's house, where she picked him up. Jones then drove the three men to the Sperber residence in the Turtle Creek area. She waited in the cab with Benton while Appellant and Granda entered the apartment.

After the fight with the Sperber brothers, Appellant and Granda returned to the cab hurried, out of breath, and worked up. Appellant told Jones to drive them to the Arlington section of Pittsburgh. While *en route*, Granda complained about having lost his cell phone at the Sperber residence. Jones dropped the three men off on Fernleaf Street in Arlington. Jones's testimony was corroborated by cell phone location records that provided evidence of her travel path.

Luis Rodriguez, who lives on Arlington Avenue near where Granda's body was found, testified that on the night of the murder, he heard screaming. When he looked outside, he saw two men, one of whom was wearing a hoody, chasing another man down the street and firing guns at him. The men were running toward his house and he saw the person being chased fall down. The two other men stood over the victim's body shooting.

After police officers arrived at the scene, they found Granda deceased on the sidewalk. Firearm experts confirmed that the 9 mm shell casings recovered at the scene were fired from the same handgun used to shoot Seth Sperber. Additionally, investigators retrieved surveillance footage from two local businesses that revealed Appellant, Granda, and Benton walking toward the location where police found Granda's body.

Appellant was arrested on October 30, 2015, and charged with homicide of Granda, shooting Seth Sperber, and related charges. This matter proceeded to a jury trial on January 26, 2017.

At trial, Appellant offered the testimony of Loretta Sizemore, an eyewitness. She testified that she saw a light blue car on Arlington Avenue before the shooting and saw a slim African American man with short hair run into the car after the shooting.

Appellant also testified on his own behalf. He stated that he dealt marijuana and had contacted Granda in order to buy from Granda's associate, Sean Sperber. Appellant explained that he and another dealer, Stone [Appellant maintained he did not know Stone's full name], often combined money to buy larger quantities of marijuana at lower prices. Appellant claimed that Stone gave him $800 toward the marijuana that Appellant planned to purchase from Sperber.

Appellant stated that when he arrived at Sperber's residence, he attempted to purchase a half a pound of marijuana for $1600. He claimed that a fight started after Sperber tried to pass off six ounces of marijuana as a half-pound, and that although the gun fired during the struggle, he did not intend to fire it.

After fleeing the Sperber residence, Appellant testified that he took a cab with Benton and Granda to Arlington Avenue to meet Stone. Appellant told Stone that the deal went bad and he lost the money. He claims to have given Stone the gun and promised to pay him another $400 to pay him back. He testified that Stone then accused Granda of setting up a bad deal, and started shooting at Granda. Appellant claimed to have run away when the shooting started.

At the conclusion of trial, Appellant was convicted of third-degree murder, carrying a firearm without a license [CFWL], and two counts of recklessly endangering another person. On May 4, 2017, the trial court sentenced him to an aggregate sentence of not less than twenty-four nor more than forty-eight years of imprisonment.

*Commonwealth v. Guggenheimer*, 802 WDA 2017, at *1-2 (Pa. Super. Sep. 24, 2019) (record citations and footnote omitted).

On September 24, 2019, this Court affirmed Appellant's judgment of sentence. *Id.* Appellant did not petition the Pennsylvania Supreme Court for allowance of appeal.

- 4 -

On August 6, 2020, Appellant filed his PCRA petition *pro se*. The PCRA court appointed counsel, who filed an amended PCRA petition on May 14, 2021. On October 6, 2021, the PCRA court filed notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant filed a response on October 26, 2021. The PCRA court dismissed the petition on November 2, 2021. Appellant timely appealed. He presents two questions for our review:

> I. Did the PCRA court err in denying an evidentiary hearing under Pa.R.Crim.P. 908(A)(2) when, among other things, [the PCRA court] found that "Petitioner's trial strategy was to seek a complete acquittal," which was not a fact of record?
>
> II. Did trial counsel, contrary to the PCRA court's conclusion, render ineffective assistance by failing to make a motion for judgment of acquittal as to the [CFWL] charge?

Appellant's Brief at 4.

We review the PCRA court's denial of relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

> [T]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that

he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. D'Amato***, 856 A.2d 806, 820 (Pa. 2004).

***Commonwealth v. Hanible***, 30 A.3d 426, 452 (Pa. 2011).

Appellant argues ineffectiveness of trial counsel. The Pennsylvania Supreme Court has stated:

> It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. ***Commonwealth v. Cooper***, 941 A.2d 655, 664 (Pa. 2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." ***Id.*** A PCRA petitioner must address each of these prongs on appeal. ***See Commonwealth v. Natividad***, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the ***Pierce*** elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. ***Cooper***, 941 A.2d at 664.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citations modified). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Taylor***, 933 A.2d 1035, 1042 (Pa. Super. 2007) (citation omitted).

Appellant first argues that trial counsel was ineffective for failing to request a jury instruction on involuntary manslaughter. ***See*** Appellant's Brief at 14-37. We are constrained to find waiver.

Appellant made the jury instruction argument in his amended PCRA petition. Amended PCRA Petition, 5/14/21, at 19-33. However, he did not raise the issue in his Rule 1925(b) concise statement, where he claimed: "The PCRA court erred in denying an evidentiary hearing under Pa.R.Crim.P. 908(A)(2) when, among other things, it found that 'Petitioner's trial strategy was to seek a complete acquittal,' which is not a fact of record." Rule 1925(b) Statement, 12/20/21, at 2 (unnumbered). This Rule 1925(b) claim mirrors the first question Appellant presents on appeal. *See* Appellant's Brief at 4. Yet in his corresponding argument section of his brief, Appellant reverts to the issue in his amended PCRA petition regarding trial counsel's ineffectiveness for failing to request a jury instruction for involuntary manslaughter. *Id.* at 14-38. The PCRA court did not address this issue in its opinion. Under Rule 1925(b)(4)(vii), an appellant waives any issue not raised in the Rule 1925(b) statement. We have explained that the statement "must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal." *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa. Super. 2018). Thus, Appellant's first issue is waived.

Waiver notwithstanding, Appellant would not be entitled to relief. Appellant argues trial counsel should have sought a jury instruction on involuntary manslaughter. He maintains "there was ample evidence in the record that made involuntary manslaughter an issue[.]" Appellant's Brief at 14. Appellant cites his trial testimony stating that he told Stone he lost Stone's

money, and at the same time gave the gun to Stone, who in turn shot Granda. *Id.* Appellant asserts his "lack of aggressive action against the victim," does not "preclude the application of an involuntary-manslaughter instruction." *Id.* at 33. He further claims the PCRA court "fabricated" trial counsel's strategy of seeking "a complete acquittal" as the basis for finding counsel was not ineffective. *Id.* at 28.

The Commonwealth disagrees, and emphasizes that the majority of cases cited by Appellant are federal cases applying federal law. Commonwealth Brief at 17-22. The Commonwealth points out that the few Pennsylvania cases Appellant cites do not "stand for the proposition that a defendant is entitled to an involuntary manslaughter instruction where he has specifically denied his actions were the proximate cause of the victim's death." *Id.* at 22. The Commonwealth explains the "Supreme Court has 'consistently declined to hold that trial counsel was ineffective for failing to advance a defense that directly and irreconcilably conflicted with the accused's claims of innocence.'" *Id.* at 23 (quoting *Commonwealth v. Spotz*, 47 A.3d 63, 91 (Pa. 2012)).

Here, the PCRA court opined:

Trial [c]ounsel did not render ineffective assistance of counsel for failing to request a jury instruction on the offense of involuntary manslaughter. [Appellant's] defense in this case was that he did not kill the victim and took no aggressive action against the victim at all. [Appellant's] trial strategy was to seek a complete acquittal. Accordingly, under these circumstances, a jury instruction on involuntary manslaughter would not have been

- 8 -

appropriate and [t]rial [c]ounsel cannot be considered ineffective for failing to request such an instruction.

Rule 907 Notice, 10/6/21, at 1 (unnumbered).  We discern no error.

The Crimes Code provides:

A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a).

With respect to jury instructions,

Defendants are generally entitled to instructions that they have requested and **that are supported by the evidence**. *Commonwealth v. Markman*, 591 Pa. 249, 916 A.2d 586, 607 (2007); *Commonwealth v. DeMarco*, 570 Pa. 263, 809 A.2d 256, 261 (2002) ("Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record."); *Commonwealth v. Browdie*, 543 Pa. 337, 671 A.2d 668, 673–74 (1996) ("[W]e hold that a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict.").  We have explained that the reason for this rule is that "instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." *Commonwealth v. Taylor*, 583 Pa. 170, 876 A.2d 916, 925–26 (2005) (quoting *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399, 400 (1980)).  A criminal defendant must, therefore, "establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Id.* (citing *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328, 1332–33 (1983)).

*Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (emphasis added).  "An instruction on involuntary manslaughter is not required unless it

has been made an issue in the case and the facts would support such a verdict." *Commonwealth v. Fletcher*, 986 A.2d 759, 791 (Pa. 2009).

In Appellant's direct appeal, this Court found the evidence sufficient to sustain his conviction of third-degree murder. We explained:

> The evidence was heavily tilted towards Appellant's culpability. The evidence against Appellant included Appellant's concession that he had possessed one of the guns used to kill Granda, and had recently shot (albeit allegedly unintentionally) Seth Sperber with it, as well as eyewitness accounts describing a person dressed similarly to Appellant chasing and shooting at Granda. Against this evidence, Appellant can point only to his own self-serving testimony that he not only gave the gun to a person he could not identify by name [beyond "Stone"], but that this person then proceeded to use the gun to kill Granda.

*Guggenheimer*, *supra*, at *4. As we found on direct appeal, the evidence did not support a charge of involuntary manslaughter.

Appellant's claim also lacks legal support. Appellant cites federal cases interpreting federal law. *See* Appellant's Brief, at 17-20. We are not bound by federal decisions. *See Commonwealth v. Giffin*, 595 A.2d 101, 107 (Pa. Super. 1991) ("In the absence of a ruling on a particular question by the United States Supreme Court, the decision of a federal intermediate appellate panel, much less that of a federal district court, is not binding on Pennsylvania courts." (citations omitted)). Appellant was convicted under Pennsylvania law, and the federal cases he cites provide no basis for relief.

The four Pennsylvania cases Appellant cites are also unavailing. *See* Appellant's Brief at 20-26. In *Commonwealth v. Diventura*, 411 A.2d 815 (Pa. 1979), the defendant admitted to strangling his wife to the point of

- 10 -

unconsciousness and putting a noose around her neck. ***Diventura***, 411 A.2d at 818. However, the defendant also claimed his wife was alive when he left the scene; he loved her; and he did not want to kill her. ***Id.*** at 818. Under this scenario, we concluded that defense counsel was ineffective for not requesting a jury instruction on involuntary manslaughter. ***Id.***

In ***Commonwealth v. Garcia***, 378 A.2d 1199, 1202 (Pa. 1977), the defendant shot the victim during a melee in a bar; the testimony about the shooting was inconsistent and the defendant testified he did not intend to shoot the victim. Therefore, the defendant was entitled to a jury charge on involuntary manslaughter. ***Id.*** at 1208-1210.

In ***Commonwealth v. Moore***, 344 A.2d 850 (Pa. 1975), the defendant testified she was trying to leave her violent husband and put his gun in her purse for protection. ***Id.*** at 852. When she tried to leave, a struggle ensued, and she shot her husband as they fought for the gun. ***Id.*** The Supreme Court held that the trial court erred in not consolidating charges of involuntary manslaughter with murder and voluntary manslaughter charges. ***Id.***

Lastly, in ***Commonwealth v. Bender***, 2020 WL 3263715 (Pa. Super. June 16, 2020) (unpublished memorandum), the defendant drove after a car containing his infant child, the child's mother, and several other people. ***Id.*** at *1. He crashed into the car, killing two people and injuring others. ***Id.*** Although the parties disputed events leading to the crash, the defendant claimed the crash was unintentional. ***Id.*** This Court affirmed the grant of

PCRA relief based on defense counsel's failure to request an involuntary manslaughter instruction. *Id.* *15-16.

In each of the above cases, the defendant admitted to killing, but claimed a lack of the requisite *mens rea* for murder and/or voluntary manslaughter. Here, Appellant denies killing the victim, but argues his testimony warranted an involuntary manslaughter instruction. ***See*** Appellant's Brief at 22-38.

The PCRA court and Commonwealth emphasize Appellant's defense. In his opening statement, trial counsel told the jury Appellant, "is innocent." N.T., 1/26/-2/6/17, at 46. In moving for judgment of acquittal on the murder charge, counsel argued:

> There is no eyewitness that places [Appellant] as the shooter in this case. The Commonwealth is tying a circumstantial knot in that they are alleging that my client possessed that firearm earlier in the evening, therefore it had to be him as one of the two individuals who fired at Mr. Granda. I would argue they have not made a case out that doesn't require speculation, and therefore, the count of Criminal Homicide should be dismissed.

*Id.* at 777.

Appellant had testified to being innocent:

Q [Trial Counsel]. So you gave this guy Stone your gun; right?

A [Appellant]. Yes.

….

Q. Eventually there was an argument between Stone and [Granda]?

A. Yes.

....

Q.  And what happened at the culmination of that argument?

A.  Last thing I heard was, "Oh, yeah, you are a snake."

Q.  Then what happened?

A.  Stone pointed the gun at [Granda].  I just started running.  I heard shots.

Q.  Did you see Stone shoot?

A.   I saw someone fire.   As soon as he pointed the gun at [Granda], he fired, and I ran as soon as I heard the shot.

....

Q.  Did you shoot Justin Granda?

A.  [Granda] was my friend.  I didn't shoot [Granda].

*Id.* at 829-32.

At closing, trial counsel argued:

[Appellant] handed [Stone] the firearm.  And ... Stone and Stone's boy shot and killed Mr. Granda.

....

There was no rush for [Appellant] to have killed Justin Granda. Why would he use a firearm they alleged he purposely used to shoot Seth Sperber to kill Mr. Granda?  They are good friends. ... I submit to you it makes more sense that this guy Stone, getting irate over what happened, would do that[.]

*Id.* at 910-12.

The record supports the PCRA court's finding that Appellant's defense, and trial counsel's strategy, was that Stone killed the victim.  Thus, counsel

would not be ineffective for failing to request a jury charge that contradicted Appellant's defense.

Appellant next claims that trial counsel was ineffective for failing to move for judgment of acquittal on the CFWL charges. *See* Appellant's Brief, at 38-43. Appellant argues:

> The testimony did not [support the charges because the Commonwealth failed to prove Appellant did not have a license for carrying a firearm], and a motion for judgment of acquittal was appropriate on these two counts based on the Commonwealth's proofs. That failure to argue the point resulted in [Appellant] being convicted of two separate felony offenses and receiving a consecutive 2 to 4 years' imprisonment on one of the counts. Prejudice is apparent, and counsel rendered ineffective assistance in this regard.

*Id.* at 38 (record citation omitted).

The Commonwealth concedes it "had not yet introduced evidence of [Appellant's] lack of licensure [when it closed its case]." Commonwealth Brief at 26. However, Appellant was under 21 when he committed the crimes, and had counsel sought judgment of acquittal on this basis, the Commonwealth would have moved to reopen the record to admit proof of Appellant's age.[2] *Id.* at 27-31. The Commonwealth claims Appellant did not show prejudice. *Id.*

The Commonwealth charged Appellant with CFWL at CP-02-CR-0001624-2016 (homicide) and CP-02-CR-0001637-2016 (aggravated

---

[2] Appellant admitted he did not have a license to carry a firearm. N.T., 1/26/-2/6/17, at 835; Appellant's Brief at 40; Commonwealth Brief at 27.

assault). Trial counsel moved for judgment of acquittal of both charges. N.T., 1/26-2/6/17, at 763-84. In the aggravated assault case, counsel stated, "the testimony, I guess, would support [the CFWL charge.]" *Id.* at 764-65. The trial court did not respond to counsel directly, but stated on the record its reasons for denying the motion for acquittal. *Id.* at 765-66.

In the homicide case, counsel moved for acquittal based on Appellant's defense that he did not shoot the victim. *Id.* at 777. Counsel argued:

> The [CFWL], again, they have to assume he was the one who carried it, that he took it from the house, on his person, because they don't have any evidence as to whether or not —
>
> In fairness, I don't see a gun in his hand in the photographs. So, I guess they would say it was concealed before the shooting.

*Id.* Counsel also opposed a second CFWL charge on the basis that the aggravated assault and homicide were a "continuing event." *Id.* at 781. Again, the trial court denied the motion and placed its reasons on the record. *Id.* at 778-81. There is no support for Appellant's claim that trial counsel was ineffective for failing to move for a judgment of acquittal in the homicide case.

With respect to the aggravated assault case, the PCRA court explained:

> There is no question the Commonwealth failed to present evidence at trial that [Appellant] did not possess a license to possess a firearm. [Appellant's] claim that trial counsel failed to move for judgment of acquittal on the firearms charge appears, at first blush, to have merit. However, in [the PCRA c]ourt's view, it is beyond dispute that had such a motion been made, the Commonwealth would have sought to reopen the record and admit the omitted evidence at trial. T[he c]ourt would have accommodated that request. Proof of [Appellant's] age would have been readily provable. There is no dispute he was under 21 years old at the time he possessed the firearm. Formal

- 15 -

documents, including probation office records, vital records and charging documents contained [Appellant's] date of birth. Law enforcement officers would have been able to testify as to his age. In **Commonwealth v. Tharp**, 575 A.2d 557, 558-559 (Pa. 1990), the Pennsylvania Supreme Court held that a trial court could reopen a case where the defendant sought a demurrer after the Commonwealth omitted evidence of a defendant's age during the case-in-chief in a corruption minors prosecution.

> Under the law of this Commonwealth a trial court has the discretion to reopen a case for either side, prior to the entry of final judgment, in order to prevent a failure or miscarriage of justice. **Commonwealth v. Evans**, 488 Pa. 38, 410 A.2d 1213 (1979); **Commonwealth v. Deitch Co.**, 449 Pa. 88, 295 A.2d 834 (1972); **see also, Commonwealth v. Staten**, 350 Pa.Super. 173, 504 A.2d 301 (1986); **Commonwealth v. Tabas**, 308 Pa.Super. 43, 454 A.2d 12 (1982); **Commonwealth v. Parente**, 294 Pa.Super. 446, 440 A.2d 549 (1982); **Commonwealth v. Ridgely**, 243 Pa.Super. 397, 365 A.2d 1283 (1976). The case law in this Commonwealth has recognized the discretion of the trial court to permit the Commonwealth to reopen its case for the purpose of meeting a demurrer interposed by the defense prior to its ruling upon that motion. **See Commonwealth v. Evans**, **supra**; **Commonwealth v. Mathis**, 317 Pa.Super. 226, 463 A.2d 1167 (1983); **Commonwealth v. Campbell**, 298 Pa.Super. 23, 444 A.2d 155 (1982).

> In this case the trial judge permitted the Commonwealth to reopen its case to present direct evidence as to the appellant's age in order to further establish the age element of a charge for corruption of a minor. That offense requires that the defendant be at least eighteen years of age. 18 Pa.C.S. § 6301(a). Here, the appellant was thirty-one years of age at the time of trial. The Commonwealth initially failed to present any direct evidence of his age but relied on the circumstantial evidence. **See supra**, note 4. After the trial judge permitted the Commonwealth to reopen, testimony was offered by

the arresting police officer who verified the age of the appellant through the appellant's driver's license.

Though [Appellant] is able to prove that his trial counsel did not move for judgment of acquittal after the close of the Commonwealth's [aggravated assault case], that error was harmless and he suffered no prejudice as a result of it. Had such a motion been made, the jury would have still been provided with evidence of his age and the result of this trial would not have changed.

PCRA Court Opinion, 4/6/22, at 7-8. Notably, the trial court did not impose a sentence for CFWL in the aggravated assault case. Order of Sentence (aggravated assault), 5/4/17, at 1; Appellant's Brief at 38 (stating Appellant received "a consecutive 2 to 4 years' imprisonment on one of the counts.").

Upon review, we discern no error or abuse of discretion by the PCRA court's denial of relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2022

- 17 -